FILED
07/10/2017
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 17, 2017

## COREY CORTEZ ABERNATHY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 287830          Barry A. Steelman, Judge**

_____

### No. E2016-01258-CCA-R3-PC

_____

In 2012, the Petitioner, Corey Cortez Abernathy, pleaded guilty to burglary of an automobile and theft of property and agreed to a sentence of two years of incarceration. In 2013, the Petitioner filed a petition for post-conviction relief based upon ineffective assistance of counsel. The post-conviction court held a hearing on the petition and denied relief. On appeal, the Petitioner alleges that he was deprived of the effective assistance of counsel because his counsel failed to file a motion to suppress illegally obtained evidence. We affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Lorrie Miller, Chattanooga, Tennessee, for the appellant, Corey Cortez Abernathy.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; M. Neal Pinkston, District Attorney General; and Amanda G. Morrison, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts and Procedural History**

This case arises from the Petitioner's burglary of an automobile. For this offense, a Hamilton County grand jury indicted the Petitioner for burglary of an automobile and theft of property.

**A. Guilty Plea**

Prior to entering a plea, the Petitioner complained that he had not received the effective assistance of counsel from his attorney ("Counsel") and asked to be appointed a new attorney. The trial court denied his request and set a trial date. On that date, the trial court informed the Petitioner that it had reconsidered his request to have a new attorney appointed, but the Petitioner informed the trial court that a new attorney would not be necessary and that he would like to resolve his case while represented by Counsel. Counsel informed the trial court that it was her understanding that the Petitioner wished to plead guilty. The Petitioner affirmed that was his decision.

The State then recited the following facts as a basis for the trial court's acceptance of the Defendant's guilty plea:

[The] State's proof would have been that on December the 2nd, [the Petitioner] burglarized a vehicle belonging to Derek Weaver, and took a laptop.

And the State's proof . . . [would have been] the police made contact on December the 9th with [the Petitioner] and he was found to be in possession of a GPS belonging to Dr. Tom Bibler, a former professor at UTC, and it was found that his car had been burglarized also.

The trial court then asked if the Petitioner was entering a plea freely and voluntarily, to which the Petitioner replied that he was. The trial court then sentenced the Petitioner to two years for each conviction to be served concurrently in the Tennessee Department of Correction.

## B. Post-Conviction Proceedings

The Petitioner filed a petition for post-conviction relief, *pro se,* alleging that: he had received the ineffective assistance of counsel; his conviction was based on illegally seized evidence; and he had entered his guilty plea unknowingly and involuntarily. The post-conviction court appointed an attorney and subsequently held a hearing, during which the following evidence was presented: the Petitioner testified that Counsel asked to be removed from his case but that the trial court denied this request. The Petitioner explained that his conflict with Counsel was that she recommended he plead guilty after viewing video footage of him breaking into the car. The Petitioner disagreed that it was him in the video. He also felt that there were grounds for suppression in his case, a contention with which Counsel did not agree. The Petitioner testified that police observed him with a backpack that contained the stolen laptop and that they "took it upon themselves" to search the backpack without his permission and despite the fact that he

did not claim ownership of it. He testified that Counsel told him that a motion to suppress would not help his case. The Petitioner told Counsel that since she wanted him to plead guilty, and he did not want to, that she should not represent him.

On cross-examination, the Petitioner agreed that the stolen laptop was recovered from his friend's residence and that he was arrested there. He clarified that a police officer saw him enter the friend's residence and that, when he exited the residence through the backdoor, the police questioned him about where he was going. The police questioned him about a backpack he had been wearing earlier, and the Petitioner replied that he had left the backpack inside the residence. The police asked for permission to retrieve the backpack and search it, and the Petitioner replied that he could not give permission to search something that was not his. The Petitioner was placed in the back of the police car, and the police entered the residence; he agreed that he was not present when the backpack was searched.

The Petitioner agreed that he watched the video of the automobile burglary. He agreed that he had prior convictions for burglary. The Petitioner recalled that he asked Counsel to file a motion to dismiss the case based on the fact that he could not be identified in the video recording. As for entering a guilty plea, the Petitioner stated that he understood he had the right to a jury trial but would have lost; he knew this because he had "been to trial before." Counsel advised the Petitioner that it was best for him to plead guilty. The Petitioner did not recall that, when next before the trial court, the trial court offered to replace Counsel with a new attorney. The Petitioner did not remember declining to have a new attorney appointed to his case.

The Petitioner testified that Counsel conveyed the State's offer to him and said it was "the best thing going." The Petitioner knew that the consequences would be a lot worse if he went to trial and lost because of his prior felonies. The Petitioned maintained that his case had grounds for suppression that Counsel never discussed with him, however, he stated that he did not know about those grounds until after he elected to plead guilty. If he had known "that my Fourth Amendment right had been violated," he would have not pleaded guilty.

On redirect-examination, the Petitioner explained that he asked Counsel if his case had any grounds for suppression, and she replied that it did not. Based on this advice, he elected to plead guilty.

Counsel testified that she was appointed to represent the Petitioner on two theft and burglary cases. In this case, she received the discovery file and later the video recordings taken of the automobile burglary. Together with the Petitioner she watched the video recording. The State conveyed to Counsel an offer for the Petitioner to plead

3

guilty and serve two years in prison with "determinant release," and a second offer to plead guilty with a two-year sentence suspended after eleven months and twenty-nine days. Counsel felt that the second offer would result in shorter prison time for the Petitioner.

About the motion to dismiss, Counsel said that arose because of the determined value of the stolen laptop. The Petitioner was of the opinion that the value was less than the indicted charge, which Counsel explained was a question of fact for the jury. Counsel then spoke with the Petitioner about the next step, but he remained focused on the motion to dismiss and why Counsel would not file it. Counsel explained that it was not an appropriate motion to file on that basis and the Petitioner "didn't receive that very well." Counsel researched the value of comparable laptops and other variables.

Counsel did not feel that any motions were necessary to file based on the video recordings. She recalled that the recordings did not show the face of the burglar but said that the man depicted was very similar to the Petitioner, particularly his stance and gait. In her opinion, the man in the video was the Petitioner. Counsel agreed that she told the Petitioner it was in his best interest to enter a plea "because if he had been convicted in the appropriate range, he would have gotten more time" and "the evidence was sufficient to convict him."

On cross-examination, Counsel reiterated that, in her opinion, a jury viewing the video would see the similarities between the man depicted and the Petitioner, based on the body build, shape, size, and the way the man walked. Counsel did not recall discussing with the Petitioner, or him asking her to file, a motion to suppress evidence. Her only recollection was the discussion about filing the motion to dismiss. Counsel discussed with the Petitioner his options as far as pleading guilty, going to trial, and trying to renegotiate the State's offers.

On the day the Petitioner pleaded guilty, Counsel spoke with him in private about the plea offer. She did not recall a discussion about suppression of evidence. She opined that there would not have been grounds for suppression in this case because the laptop was found in someone else's residence, a friend of the Petitioner, and thus she did not think the Petitioner would have standing to challenge that search. Counsel recalled that on the day the Petitioner pleaded guilty, the trial court offered to relieve Counsel as his attorney, and he asked the trial court to let Counsel work out the case for him and resolve it that day.

At the conclusion of the hearing, the post-conviction court denied the petition, stating the following:

From the post-conviction testimony, the Court gathers that, after the [P]etitioner arrived in prison, he learned that there were grounds for suppression of a laptop-containing backpack. He does not, however, claim either backpack or laptop or the residence where they were found as his. According to [C]ounsel, as a consequence, the [P]etitioner's standing to challenge the admissibility of the evidence is questionable. Although he refers to the proof at the preliminary hearing, the record does not contain and he does not describe that proof, and the [S]tate contends that there was no such hearing.

After viewing the video with [C]ounsel, the [Petitioner] remarked that the perpetrator's nose, eyes, ears, and hair cannot be seen, the color of his clothes can barely be seen, and he "he leaves the car without a backpack or laptop." It appeared, however, that "something had been put in his clothing, down his pants . . . "

The [Petitioner], who had two prior convictions for burglary, know that he could go to trial and had done so before. . . . . Although he did not "have anything to do with the ranges," he was aware of the possibility of a longer sentence on a conviction after trial.

Counsel mailed paper discovery to the [P]etitioner. She and her assistant viewed the video recording with him and explained that it looked like him, meaning not his face but his stance, gait, build, shape, and size.

Counsel does not recall any discussion about pre-trial motions, including motions to suppress, other than a motion to dismiss. . . . . The [P]etitioner was arrested on a warrant and found in possession of a stolen GPS, which was part of the other, not the laptop, case. The laptop was found in a residence and not taken from the [P]etitioner's person. Counsel researched the value of the laptop on the internet.

Counsel thoroughly discussed with the [P]etitioner his options: going to trial, accepting the plea offer, or renegotiating. She reviewed the plea papers with him several times. Because the [P]etitioner had more than one conviction, she did not think that he should have been a Range I offender. She recommended that he accept the plea offer.

. . . .

The [P]etitioner argues that [C]ounsel did not file a motion to

5

suppress or dismiss, despite the premature seizure of evidence, and in one case, insufficient video evidence of the identity of the perpetrator. With respect to the motion to suppress it now appears that he faults [C]ounsel for not challenging the seizure of the laptop-containing backpack. The laptop, which he did not claim, was seized in the search of a backpack, which he did not claim, in a residence that was not his. . . . . Considering there is no evidence that the [P]etitioner had a reasonable expectation of privacy in the residence, the backpack or the laptop, the Court finds neither deficiency nor prejudice in [C]ounsel's failure to file a motion to suppress the seizure of the laptop-containing backpack from the residence.

As for the motion to dismiss that a surveillance recording did not include a clear view of the perpetrator's face does not mean that the recording did not provide other clues to the perpetrator's identity. Nor does it mean that other, sufficient evidence of identity did not exist. In any event, it is not ground [sic] for dismissal. . . . Considering that there was no ground for a motion to dismiss, the Court finds neither deficiency nor prejudice in [C]ounsel's failure to file a motion to dismiss.

The [P]etitioner alleges that his counsel, though she did file a motion to withdraw, did not succeed in withdrawing, despite a conflict of interest. There is no evidence of a conflict of interest on [C]ounsel's part. In addition, exhibits 1 and 2, the transcripts of the hearing on the motion to withdraw and the pleas, reflect that, after consultation with [C]ounsel at the [P]etitioner's request, instead of accepting the Court's offer to relieve [C]ounsel and appoint substitute counsel, the [P]etitioner, satisfied with the plea agreement and [C]ounsel, proceeded with the entry of the pleas. The Court therefore finds neither deficiency nor prejudice in [C]ounsel's performance in this respect.

The [P]etitioner claims that his pleas were involuntary or unintelligent. . . . . in essence . . . because he did not receive the effective assistance of counsel or there was an insufficient factual basis for one or both pleas. Almost all of the circumstances of the pleas, however, suggest that they were voluntary and intelligent.

The [P]etitioner is intelligent, literate, and assertive. He is familiar with criminal proceedings, having pled guilty and, by his own account, not guilty before. He had competent counsel and opportunity to confer with [C]ounsel about his alternatives. He was aware of the charges and evidence against him, including the weaknesses in the evidence against him, the

6

perpetrator's unidentifiable face, the non-appearance of the backpack or laptop in the video recording, and the overvaluation of the laptop. He does not dispute that he understood his rights. He was under no apparent pressure to plead guilty but was eager to do so. Even if he did not understand sentence ranges, he did understand that the agreed sentences were more favorable than the possible sentences on conviction after a trial. He pled guilty to avoid a longer sentence after trial, which, with an apparently sufficient factual basis for the pleas and two prior burglary convictions, was more than an inconsequential possibility. . . . . The Court therefore finds that the pleas were voluntary and intelligent.

It is from the post-conviction court's judgment that the Petitioner now appeals.

## II. Analysis

The Petitioner contends on appeal that the post-conviction court erred when it denied his petition because he received the ineffective assistance of counsel when Counsel failed to file a motion to suppress and failed to advise the Petitioner that he had an expectation of privacy in the backpack and its contents that was found and searched in his friend's residence. The State responds that Counsel's representation of the Petitioner was not ineffective when she did not file a motion to suppress the evidence seized from a search of the backpack. The State asserts that the Petitioner disclaimed interest and ownership in the backpack. This, the State claims, was sufficient evidence that the Petitioner abandoned any reasonable expectation of privacy in the backpack and thus, he cannot show that the proceedings would have concluded differently had Counsel filed a motion to suppress the backpack evidence. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

7

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462.

Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting

8

*United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

On the matter of the failure of Counsel to file a motion to suppress at trial, the post-conviction court found that, because the Petitioner claimed that the backpack was not his and that it was inside a residence he did not own or occupy, the Petitioner had no reasonable expectation of privacy in the residence, the backpack inside, or the contents of the backpack. Thus, the post-conviction court found that Counsel was not deficient and that the Petitioner suffered no prejudice when Counsel did not file a motion to suppress the evidence seized from the backpack.

We conclude that the evidence does not preponderate against the trial court's findings. The evidence presented was that the laptop was found in someone else's residence, a friend of the Petitioner, and thus Counsel felt that the Petitioner lacked standing to challenge that search. The Petitioner also testified that he left the backpack inside a friend's residence and when asked by the police about the backpack, he disclaimed ownership. "[W]hen a person disclaims any interest in the premises or possessions searched, or in the article seized, he can not question the legality of the search." *Miller v. State*, 520 S.W.2d 729, 734 (Tenn. 1975) (quoting *Neal v. State*, 334 S.W.2d 731 (Tenn. 1960). As such, Counsel was not deficient for failing to file a motion to suppress under these circumstances. Accordingly, we conclude that the Petitioner is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE